## BABCOCK, Appellant, v. HAHN.

### Division One, May 27, 1903.

1. **Seat of Goverment.** The words "seat of government" and "county seat," as used in all the statutes referring to counties, are synonymous and mean the same thing. They do not mean the courthouse, but the town.

2. ———: RECORDER'S OFFICE: REMOVAL. There is no law prohibiting the removal of the recorder's office from the old courthouse in the city of St. Louis, where the civil courts are held, to the city hall, seven blocks away but within the city limits.

3. ———: ———: ———: NEW LIMITS. Nor does it make any difference in such case that the city hall is located on ground which was outside the city limits when said city was selected as the county seat. The case of State ex rel. v. Smith, 46 Mo. 60, was made inoperate by section 2 of article 9, of the present Constitution, which declares that "all additions to a town which is a county seat shall be included, considered and regarded as a part of the county seat."

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*G. B. Webster* for appellant.

(1) The petition stated facts which, if proved, were sufficient to entitle the plaintiff to relief. Their truth was admitted by the demurrer. They were statements of facts and not conclusions of law. Bliss, Code Pleading, sec. 210; Kansas City v. Johnson, 78 Mo. 661; Long v. Armsby Co., 43 Mo. App. 253. (2) The allegations of the petition touching the organization of St. Louis county, the appointment, qualification and action of the board of commissioners to locate a permanent seat of justice, and the subsequent establishment

and maintenance of the courts of record upon the block of ground in question, were sufficient to demonstrate that the site of the old courthouse was, and still is, the seat of justice of the city of St. Louis. Laws 1825, secs. 1, 2 and 3, p. 244; Ellis v. State, 92 Tenn. 85, 20 S. W. 502. Neither the separation of the city and county, the subsequent extension of the city limits, nor the determination of the respondent to disregard the statute and locate his office at some place which suited him better, changed the location of the seat of justice. State ex rel. v. Smith, 46 Mo. 60; R. S. 1899, sec. 9055.

*Chas. W. Bates* and *A. Nicholson* for respondent.

(1) "Seat of justice" and "county seat" are terms which mean the same thing, and now are and always have been used interchangeably in the laws of the State and Territory of Missouri, and relate to a place and not to a particular lot or lots of ground, on which one or more public buildings may be located. 1 Terr. Laws 1804-1824, chap. 267, sec. 7, p. 657; ch. 303, p. 752; ch. 340, p. 796; ch. 347, secs. 2, 3, 4, p. 806; Laws 1825, chap. 3, secs. 3-4-7-8, p. 245; Ellis v. State, 92 Mo. 85; State ex rel. v. Smith, 46 Mo. 60; R. S. 1899, secs. 6671, 6675, 6694, 6709, 6712, 6713, 6719, 6725, 6726. (2) The Constitution of 1875, provides that all additions to a county seat become part of said county seat; and under that provision the entire city of St. Louis is now, and has been since 1875, the seat of justice. Constitution 1875, art. 9, sec. 2. (3) The demurrer admits only such facts as are well pleaded, and does not admit conclusions of law or conclusions drawn from facts pleaded. Blaine v. Knapp, 140 Mo. 241.

VALLIANT, J.—Plaintiff is a resident and taxpayer of the city of St. Louis, and defendant is the recorder of deeds of that city. The petition states that the defendant is about to remove his office, its books and

records from the courthouse to the city hall, and the prayer of the petition is that he be enjoined from doing so. The court sustained a demurrer to the petition, and final judgment thereon for defendant having been duly entered, plaintiff brings the cause to this court by appeal.

The plaintiff bottoms his case on section 9055, Revised Statutes 1899, which is: "The recorder shall keep his office at the seat of justice in each county, and shall provide same with suitable books in which he shall record all instruments of writing authorized or required to be recorded."

The contention is that the term "seat of justice" in that section means the courthouse, and that therefore it is unlawful to remove the office to the city hall, which the petition says is seven squares distant from the courthouse in the same city, and is located on a spot that was not in the town of St. Louis in 1822 when the present courthouse was located.

Passing over without deciding the question as to the right of the plaintiff as an individual resident and taxpayer to maintain such a suit, we come at once to the main proposition which plaintiff lays down as the foundation of his case, that is, that the term "seat of justice" means the courthouse only.

The petition goes back to the act of the General Assembly entitled "An Act concerning a courthouse and jail in the county of St. Louis," approved December 14, 1822. That act appoints certain commissioners "to select a proper site within the town of St. Louis whereon to erect a courthouse for said county," and authorizes them to accept deeds conveying the land selected to the county for that purpose. Then the petition states that the commissioners selected the lot or square on which the courthouse is now located; that a courthouse was built on it in 1824, and that a courthouse had ever since been maintained on that square and the courts of record of the county were held there until 1876, when the city

became separated from the county and became an independent subdivision of the State, since which date the civil courts of record have continued to be held in that courthouse, and from those facts the pleader draws the legal conclusions that the courthouse alone is the seat of justice in the city of St. Louis.

The demurrer admits the material facts stated in the petition but does not admit the legal conclusion drawn from them. Whether under the facts stated the present courthouse in the city constitutes alone the seat of justice is a question of law properly raised by the demurrer.

The terms "seat of justice" and "county seat" are synonymous and are used indifferently to express the same thing in all our statutes relating to the subject. The learned counsel for respondent have demonstrated this in their brief by reference to various statutes from the beginning of the State to the present time. [Ter. Laws 1804-24, ch. 267, sec. 7; Ibid, ch. 303, p. 752; ch. 340, p. 796; ch. 347, p. 806; Laws 1825, ch. 3; R. S. 1899, secs. 6671, 6675, 6694, 6712, 6713, 6719, 6725, 6726.]

Those terms are so treated by the best authorities as the following quotations show: Bouvier: "Seat of justice—the county seat; the place where the courthouse and county officers are located, the place where the chancery, circuit and county courts are held and where the county records are kept." Black's Law Dic.: "A county seat or county town is the chief town of a county where the county buildings and courts are located and the county business transacted." Webster: "County seat—a county town, the chief town of a county where the county business is transacted, a shire town." Century Dic.: "County seat—the seat of government of a county; the town in which the county and other courts are held and where the county officers perform their functions."

The authorities relied on by the learned counsel for the plaintiff also treat those terms as synonymous.

In Ellis v. State, 92 Tenn. 85, the court said: "The 'seat of justice,' within the meaning of the Constitution, is what is commonly called 'the county seat.' It is the place where the courthouse and the jail and the county officers are located." The word "place" is there used as meaning "town." The court does not say, as the plaintiff in this case says, that the seat of justice is the courthouse, but it says it is the place where the courthouse and other county buildings are located.

In State ex rel. v. Smith, 46 Mo. 60, also relied on by appellant, the question was whether the county court had authority to remove the courthouse from its original site to a new addition to the town of Lebanon. The court referred to the Act of February 24, 1849, organizing the county of Laclede, and said that by provision of the act "commissioners were appointed to locate a seat of justice; that the commissioners, in the discharge of their duties, selected as the seat of justice for said county the tracts or parcels of ground on which the original town of Lebanon was afterwards built. The commissioners received as a donation for said county seat fifty acres of land," etc. And further in the same opinion the court said that the county authorities "caused the tracts of land so selected as the seat of justice to be laid off in town lots and blocks, and that, in the sale, block numbered two in the tract so laid off was reserved for the purpose of erecting thereon the public buildings of the county." The court in that opinion not only uses the terms "seat of justice" and "county seat" as synonymous, but says that the commissioners selected fifty acres as the seat of justice and that the same were laid off into town lots and the town was built on those lots.

Section 8104, Revised Statutes 1899: "There shall be kept and maintained, in good and sufficient condition and repair, a common jail in each county within this

State, to be located at the permanent seat of justice for such county.''

That statute as imperatively requires the jail to be located at the seat of justice as does the statute on which the appellant relies require the recorder to keep his office at the seat of justice. Yet it is unusual for the jail to be under the same roof or on the same lot or square as is the courthouse of a county.

The term ''seat of justice'' for a county is like the term seat of government for the State. The Constitution requires certain officers to reside at the seat of government, to keep their records and perform their duties there. That does not mean that they are all required to reside under the same roof or keep their offices in the capitol building.

The petition avers that at the time the courthouse was erected in the town of St. Louis in 1824, the land on which is situated the city hall, to which the recorder is about to remove, was not embraced in the town limits, and for that reason the removal is unlawful.

In State ex rel. v. Smith, above referred to, it was held that the county court had no authority to remove the courthouse to a lot or square that was not a part of the original town of Lebanon, for the reason that the fifty acres had been donated to the county with the understanding that the courthouse should be located there; the county had sold lots and induced people to invest there, etc. That case arose and was decided in 1870. But in 1875 a new Constitution was adopted and in it was the following: ''All additions to a town which is a county seat shall be included, considered and regarded as part of the county seat.'' [Art. 9, sec. 2.] This was a new provision in our law.

In that clause not only is the county seat called a town, but all additions are by express terms made a part of the county seat. There could have been no object in adopting that clause if it was not to impress upon the additions to the town the same character as regards

county business as the original town possessed; if it did not accomplish that purpose it did not accomplish anything.

The city of St. Louis being for all necessary purposes a county in itself, the seat of justice of such quasi county is the city itself and as the city hall, to which the defendant was about to remove his office when this suit was filed, is within the city limits it is at the seat of justice within the meaning of section 9055, Revised Statutes 1899.

The judgment sustaining the demurrer was correct and it is affirmed. All concur, except *Robinson, J.*, absent.