MARIE WATSON, ADMINISTRATRIX OF THE ESTATE OF HOBART WATSON, DECEASED v.
ROBERT E. STORIE

No. 8225SC202

(Filed 15 February 1983)

1. Evidence § 50.4— medical expert—treatment decedent would have received

A qualified medical expert may testify through appropriate questions as
to the type, nature, and extent of medical attention and treatment a person
who had received specific injuries could or would have received had he sought
medical attention promptly. Testimony concerning treatment decedent would
have received had he sought medical attention was appropriate in this
wrongful death action to show decedent's failure to mitigate damages by seek-
ing prompt medical attention.

2. Damages § 9; Death § 7.5; Negligence § 38— instructions—contributory
negligence—failure to seek medical attention—mitigation of damages

The trial court in this wrongful death action erred in instructing the jury
that it could find that the decedent was contributorily negligent by failing
promptly to seek medical attention after the accident in question since dece-
dent's failure to obtain medical attention could not be a cause of the accident
that produced the injuries. Rather, evidence of decedent's failure to seek
prompt medical attention should have been considered by the jury on the ques-
tion of mitigation of damages.

APPEAL by plaintiff from *Lamm, Judge.* Judgment entered 2
November 1981 in Superior Court, CALDWELL County. Heard in
the Court of Appeals 12 January 1983.

On 17 September 1979, decedent Hobart Watson, defendant,
and two other men were riding in defendant's pickup truck travel-
ing on an unpaved, rural Wilkes County road. All of the men were
drinking beer and wine.

Defendant was driving, while decedent sat next to the door
on the far right-hand side of the truck. Defendant drove down a
hill, ran off the road hitting an embankment two times before
coming to a halt. Before coming to a final stop, the right front
side of the truck was damaged, the cab was warped, the wind-
shield was knocked out of the truck and blood was on the right-
hand side of the hood and right-hand passenger area.

Following the wreck Hobart Watson, the decedent, was
asked by the defendant, defendant's brother, and his own wife to
go to a doctor. He refused all requests to seek medical attention.

On 19 September 1979, decedent finally agreed to go to the doctor but went first to his daughter's house to take a bath. While bathing, decedent stopped breathing due to a tear in the aortic arch, caused by the accident. Some motion of decedent's arm apparently pulled open the tear in the aortic arch, resulting in his immediate death. Other injuries found by the medical examiner were massive contusions of the anterior chest wall and multiple rib fractures.

Decedent's wife brought this wrongful death action on 17 June 1980, alleging defendant caused decedent's death by his negligent driving of the pickup truck. Defendant filed his answer on 4 August 1980 in which he denied negligence and pleaded in defense contributory negligence, failure to mitigate damages and sudden emergency.

The case was tried at the 19 October 1981 Civil Session of Caldwell County Superior Court. The court held a precharge conference, and then instructed the jury on the issues of negligence, contributory negligence and damages. Following a jury verdict finding negligence and contributory negligence, plaintiff appealed.

*Ted West Professional Association by Ted G. West and David S. Lackey for plaintiff appellant.*

*Todd, Vanderbloemen & Respass by Bruce W. Vanderbloemen for defendant appellee.*

BRASWELL, Judge.

[1] In plaintiff's first assignment of error, she argues that it was error for the trial court to allow defense counsel to ask the medical examiner questions which called for speculative answers as to the treatment plaintiff's decedent would have received had he sought medical attention. While speculative answers are not approved, we hold that a qualified medical expert can testify through appropriate questions as to the type, nature, and extent of medical attention and treatment a person who had received specific injuries could or would have received had he sought medical attention promptly. *See* G.S. 8-58.12. "[E]xpert medical evidence is admissible to show the nature and extent of the plaintiff's injuries, the effect of such injuries on the plaintiff's capacity to work or to use his physical powers, and the probable result of

future medical or surgical treatment of the plaintiff." *Mintz v. Atlantic Coast Line Railroad*, 236 N.C. 109, 114, 72 S.E. 2d 38, 42-43 (1952). *See*, 1 Brandis on North Carolina Evidence § 135 (1982), and *cf. Hunt v. Bradshaw*, 242 N.C. 517, 522, 88 S.E. 2d 762, 765 (1955): "In determining whether the operation should have been undertaken, resort must be had to the evidence of experts. Expert opinion must be founded upon expert knowledge."

Dr. Robert Rogers, the Caldwell County Medical Examiner, testified as a witness for plaintiff and was subject to reasonable cross-examination by defendant's attorney. He testified without objection that decedent would have been monitored and tested for internal bleeding and that internal bleeding could be determined by the use of dyes or exploratory surgery if necessary. This testimony concerns the allegation of whether or not decedent failed to seek medical attention, which bears directly on defendant's defense of failure to mitigate damages by seeking prompt medical attention. Therefore, questions concerning treatment decedent would have received had he sought medical attention were appropriate.

[2] In her third assignment of error, plaintiff alleges that the trial court erred in instructing the jury that it could find that the decedent was contributorily negligent by failing promptly to seek medical attention. We agree.

First, contributory negligence "is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains." *Jackson v. McBride*, 270 N.C. 367, 372, 154 S.E. 2d 468, 471 (1967). It is "a plaintiff's negligence which concurs with that of the defendant in producing the occurrence which caused the original injury . . . ." *Miller v. Miller*, 273 N.C. 228, 237, 160 S.E. 2d 65, 73 (1968). Clearly, decedent's failure to promptly obtain medical attention for injuries suffered in the accident in issue cannot be a cause of the accident that produced the injuries.

Second, to instruct that decedent's failure to promptly obtain medical attention constituted contributory negligence would result in foreclosing a plaintiff from receiving damages otherwise compensable under the law, such as damages to his own personal

property, *i.e.*, wristwatch, eyeglasses, clothes. This result is undesirable.

For these reasons, decedent's failure to promptly seek medical attention cannot constitute contributory negligence and the trial court, therefore, erred in instructing the jury that it could find that decedent was contributorily negligent by failing to seek medical attention.

However, decedent's failure to go to the doctor or hospital was a proper subject for the jury to consider concerning mitigation of damages, but under the damage issue rather than under the issue of contributory negligence. " 'A party injured . . . is required to protect himself from loss if he can do so with reasonable exertion or trifling expense, and ordinarily will be allowed to recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided.' (Citations omitted.)" *Harris and Harris Construction Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 121, 123 S.E. 2d 590, 598 (1962). Therefore, having determined that defendant was negligent, and if the jury had appropriately found that plaintiff was not contributorily negligent, the jury should have considered the decedent's duty to exercise ordinary care to mitigate his damages in fixing the amount of damages to which plaintiff was entitled.

> "The rule in North Carolina is that an injured plaintiff, whether his case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If he fails to do so, for any part of the loss incident to such failure, no recovery can be had. *Johnson v. R.R.*, 184 N.C. 101, 113 S.E. 606. This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable. 22 Am. Jur. 2d *Damages* §§ 30-32 (1965)."

*Miller v. Miller*, 273 N.C. 228, 239, 160 S.E. 2d 65, 73-4 (1968).

We believe it is unnecessary to discuss plaintiff's other assignments of error. Because of the improper jury instruction of contributory negligence, this case is, therefore, remanded for a new trial.

New trial.

Chief Judge VAUGHN and Judge WELLS concur.